**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

CASE NO.:

VIOLA D. JERKINS

    Plaintiff,

v.

HPT IHG PROPERTIES TRUST d/b/a
STAYBRIDGE SUITES.

    Defendants,
_____/

**COMPLAINT
(JURY TRIAL DEMANDED)**

COMES NOW, Plaintiff, VIOLA D. JERKINS, by and through her undersigned counsel, sues the Defendant, HPT IHG PROPERTIES TRUST d/b/a STAYBRIDGE SUITES, and states as follows:

**JURISDICTIONAL ALLEGATIONS**

1.    The Court has original jurisdiction pursuant to 11 U.S.C. § 1331, 42 U.S.C. § 3613, because this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 et seq.

2.    Venue is proper in the Southern District of Florida, Ft. Lauderdale Division, under 28 U.S.C. § 1391(b), because the claim arose in this judicial district.

3.    The Plaintiff, VIOLA D. JERKINS (hereinafter "JERKINS") is currently a resident of Broward County, Florida, and is otherwise *sui juris*.

4.    Defendant, HPT IHG PROPERTIES TRUST d/b/a STAYBRIDGE SUITES (hereinafter "STAYBRIDGE") is a foreign corporation, licensed to and doing business in Borward County, Florida.

## GENERAL ALLEGATIONS

5.      Plaintiff Viola Jerkins is 83 year old woman who lives with type 2 diabetes and walks with a walker. On occasion, Ms. Viola Jerkins becomes Hypoglycemic (low blood sugar) and that is easily treated with consumption of glucose or simple carbohydrates, like a glass of orange juice, as such, VIOLA JERKINS is an aggrieved person and person with a disability under 42 U.S.C. §3602(h) and (i).

6.      STAYBRIDGE SUITES operates a long-term hotel, located at 420 N. Pine Island Road, Plantation, Florida 33324.

7.      Staybridge Suites is a hotel in Plantation, Florida, that is owned and operated by InterContinental Hotels Group ("IHG"). Staybridge Suites advertises itself as having "friendly, helpful team member."

8.      On Tuesday, June 27, 2017, Ms. Jerkins checked into Staybridge Suites for an indefinite period of time, as she was forced to do so by her insurance company after mold was found in her home.

9.      Further, Staybridge Suites has a 24/7 convenience store so that guests can "stock up on easy-to-prepare meals, snacks and any little things left at home." Staybridge Suites offers dry cleaning pick up and housekeeping services as part of their amenities.

10.     Staybridge Suites provides a free breakfast buffet for guests and an evening snack for socializing in the common area.  The evening social hour occurs Monday through Wednesday, and food and drinks are provided.

11.     Ms. Viola Jerkins had a nurse visit her one (1) time a week in order to administer insulin to Ms. Viola Jerkins to manage her type 2 diabetes and to check on her. Ms. Viola Jerkins also had a certified nursing assistant ("CNA") visit her two (2) times per week to assist with

bathing, dressing and anything else Ms. Jerkins might need.

12. In July 2017, while Ms. Jerkins' nurse was out of town, Ms. Jerkins became Hypoglycemic. To treat that, Ms. Jerkins called the front desk at Staybridge Suites and requested that someone from the Staybridge Suites staff bring orange juice to her room. One of Staybridge Suites' staff brought orange juice to Ms. Jerkins' room. The staff member informed her to contact the front desk if anything else was needed.

13. Ms. Viola Jerkins had a nurse visit her one (1) time a week in order to administer insulin to Ms. Viola Jerkins to manage her type 2 diabetes and to check on her. Ms. Viola Jerkins also had a certified nursing assistant ("CNA") visit her two (2) times per week to assist with bathing, dressing and anything else Ms. Jerkins might need.

14. A few days later, Ms. Jerkins called her daughter, Wendy Jerkins, when she felt Hypoglycemic and requested that Wendy Jerkins bring her orange juice. Since Wendy Jerkins was not in the area and it was urgent that Ms. Viola Jerkins ingest something to elevate her sugar, Wendy Jerkins called the front desk at Staybridge Suites to inquire if one of Staybridge Suites' staff could bring orange juice to her mother. Notwithstanding the fact that hotels often bring things to guests' rooms like towels, pillows, or soap, the front desk clerk that Wendy Jerkins spoke to refused to bring orange juice to Ms. Viola Jerkins stating that there was a policy against that despite the fact that orange juice was available as it is served as part of the breakfast buffet and snacks and drinks are sold in the convenience store. Wendy Jerkins requested to review that policy but was never provided it and never received a call back from the desk clerk regarding the policy. As such, Wendy Jerkins contacted the operations manager to inquire about the policy.

15. At Staybridge Suites there is a buffet section in the lobby where breakfast and a light dinner and snacks are served. Because Ms. Viola Jerkins walks with a walker, she requires

assistance with carrying her food and beverage to the table in the common area. When Ms. Viola Jerkins would arrive at the buffet, it became apparent – with only a few exceptions -- that the Staybridge Suites employees working the buffet would quickly leave the area to avoid assisting Ms. Viola Jerkins.

16. On Wednesday, August 2, 2017, Ms. Viola Jerkins prepared dinner in her room. While in the room, the food fell and made a mess on the floor. Ms. Viola Jerkins called the front desk at Staybridge Suites to request a mop so that she could clean the mess herself. Eventually, a man came up to clean the mess and offered to have the person working the buffet get Ms. Viola Jerkins some food from the lobby where the evening snack was being provided. Ms. Jerkins agreed, and a plate was brought to her in her room.

17. On the morning of Thursday, August 3, 2017, Ms. Viola Jerkins went to the breakfast buffet, and she did not see the person who usually helped her in the dining area, Antonia Russell. Antonia Russell had mentioned a health concern previously, and Ms. Viola Jerkins did not know if she was working that morning. Ms. Viola Jerkins called her daughter, Wendy Jerkins, to inform her that she needed assistance with the buffet.

18. In response, on Thursday, August 3, 2017, Wendy Jerkins called the front desk and spoke to Carina Lopez – the morning front desk agent at Staybridge Suites – to inform her that the person who usually helped her mother, Antonia Russell, was not there. Carina Lopez said that she would check. Wendy Jerkins called her mother back to inform her that assistance was on its way. After her mother informed her that Antonia Russell was indeed working that day, Wendy Jerkins immediately sought to update Carina Lopez and to thank her for her efforts.

19. On August 3, 2017, when Wendy Jerkins called Carina Lopez back to notify her that help was no longer needed, that Antonia Russell was indeed working at Staybridge Suites that

morning, and to thank Carina Lopez for her efforts, Muriel – the night front desk agent – intercepted the call.

20. After Wendy Jerkins identified herself and before Wendy Jerkins could update Muriel on the purpose of her call, Muriel stated that her mother – Viola Jerkins – needed twenty-four hour care, that Staybridge Suites was not the place for Viola Jerkins, and that Viola Jerkins should go to an assisted living facility. Carina Lopez then took the telephone away from Muriel.

21. In response to the statements made by Muriel, Wendy Jerkins called the property manager at Staybridge Suites, Jeremy Dozier, on Thursday, August 3, 2017.

22. Wendy Jerkins was not able to reach Jeremy Dozier but was forwarded to Bradley Rockwell, the Regional Manager / General Manager at Staybridge Suites on Thursday, August 3, 2017.

23. On August 3, 2017, Bradley Rockwell informed Wendy Jerkins that he has informed the staff at Staybridge Suites that—if Viola Jerkins calls the front desk asking for orange juice—to tell her that they would not provide orange juice and to call 9-1-1 instead; he stated that no Staybridge Suites employee would get Viola Jerkins orange juice. In fact, he stated that if Viola Jerkins called for orange juice because her sugar was low, Staybridge Suites employees would call 9-1-1 because they "will not aid with a diabetic attack."

24. Bradley Rockwell stated that they wanted Viola Jerkins out of Staybridge Suites immediately because Viola Jerkins "is a liability" because she had Staybridge Suites employees assisting with clothing her, helping her in the bathroom and making her sandwiches. To the contrary, no Staybridge Suites employee ever helped clothe Viola Jerkins or ever helped Viola Jerkins in the bathroom. The Staybridge Suites employees did bring Viola Jerkins orange juice on one occasion, cleaned a mess in Viola Jerkins' room on one occasion, and helped carry food from

the buffet on some occasions.

25.     Wendy Jerkins was greatly concerned because her mother Viola Jerkins had been residing at Staybridge Suites for at **least 37 days**, and they were still moving their belongings and personal items into Staybridge Suites.  It had taken several weeks for Wendy Jerkins and Viola Jerkins to bring the belongings and the personal effects that were already at the Staybridge Suites, and Viola Jerkins and Wendy Jerkins had far too many belongings to remove on such little notice.  When Wendy Jerkins asked Bradley Rockwell what he meant by "immediately," Bradley Rockwell stated that Viola Jerkins must move by the end of the day, Thursday, August 3, 2017.

26.     After Bradley Rockwell told Wendy Jerkins that he wanted Viola Jerkins out of the hotel immediately, one of the Staybridge Suites managers called ALE Solutions – the placement agency that State Farm Insurance uses to find hotels for individuals who are displaced from their homes – and informed ALE that Staybridge Suites no longer wanted Viola Jerkins at their hotel.

27.     Emily Russey – the Hotel Coordinator at ALE – called Wendy Jerkins and Viola Jerkins about the Staybridge Suites' order to vacate the hotel immediately.  Emily Russey also indicated that she would contact Staybridge Suites to see if they would provide more time for her to find housing for Viola Jerkins.  Emily Russey (the Hotel Coordinator at ALE) and Gregg Braun (the then State Farm Insurance adjuster / representative) called Staybridge Suites to find out if the hotel would give Viola Jerkins more time.  Staybridge Suites permitted one additional day, which was Friday, August 4, 2017.  Emily Russey – the ALE Hotel Coordinator -- eventually called and spoke to Sergio Murray (the Staybridge Suites Front Desk Supervisor) and was informed that Staybridge Suites would give Viola Jerkins until Saturday, August 5, 2017, to move out.  Because many hotels were booked for the weekend, Emily Russey encountered multiple difficulties in finding on short notice a two bedroom pet-friendly handicap accessible hotel room with a walk-in

Case 0:19-cv-62198-WPD   Document 1   Entered on FLSD Docket 09/04/2019   Page 7 of 10

*JERKINS v. STAYBRIDGE SUITES*
*COMPLAINT*
*Page 7 of 10*

shower to accommodate Viola Jerkins' disability.

28.     On Thursday, August 3, 2017, Wendy Jerkins emailed IHG, the corporate headquarters, to complain about Staybridge Suites forcing Viola Jerkins out of their property, and did not receive a reply.

29.     On Saturday, August 5, 2017, Viola Jerkins checked out of Staybridge Suites not by choice but because she was forced to do so. After being forced out of Staybridge Suites, Viola Jerkins was forced to be in three hotel rooms in two days.  No handicap room with the appropriate handicap accommodations was available at the other hotel until Sunday, August 6, 2017.

30.     On Wednesday, August 9, 2017, Wendy Jerkins sent an email to Guest Relations at IHG providing Viola Jerkins' name as the name of the reservation and the confirmation number.

31.     On August 15, 2017, Ms. Jerkins finally received a reason from IHG, as follows:

> My name is Blanchie. Thank you for your prompt response.
> First, I apologize that we are unable to reply sooner than you expected due to a high volume of e-mail contact.
>
> We received a communication from the hotel on 09 August 2017. They explained that Mrs. Jerkins was not ordered to vacate. Hotel requested insurance company who was paying for the room to relocate Mrs. Jenkins to a facility capable of meeting her needs which they were told Mrs. Jenkins needed. It also appears that the hotel management spoke with you several times, explaining that they are a limited service hotel and did not have the staffing to provide one on one care for your mother.
>
> Should you wish to discuss this further, please contact the hotel at 954 577 9696 or via email at jeremy.dozier@ihg.com . They are in the best position to assist.
>
> We appreciate you reaching out to us.
>
> Kind regards,
>
> Blanchie
> Case Manager
> Guest Relations

IHG
Reference No. 10419689361

32. Plaintiff has retained Disability Independence Group to represent them in this cause and have agreed to pay a reasonable fee for his services.

33. Plaintiff has complied with all necessary conditions precedent to the bringing of this action, or such conditions precedent have been waived.

### COUNT I – VIOLATION OF THE FAIR HOUSING ACT – DENIAL OF HOUSING
### 42 U.S.C. § 3604(f)(1) and Florida Statute § 760.23(1)

34. JERKINS repeats and realleges the allegations contained in paragraphs 1 through 33 above as though fully set forth herein.

35. The foregoing conduct of the Defendants in discriminating in the rental, or to make unavailable or deny, a dwelling to any buyer or renter because of a disability, is discriminatory and unlawful.

36. Defendants' conduct in evicting JERKINS because of her disability is discriminatory and unlawful.

37. Defendants' statements, with respect to the rental of a dwelling that indicated any preference, limitation, or discrimination based upon disability is unlawful.

38. Defendants' actions were in total and reckless disregard of JERKINS' rights and indifferent to the medical condition or needs of JERKINS. As a result of this unlawful discrimination, JERKINS has suffered injury, damages, mental anguish, grievous emotional distress, embarrassment, shame, worry, frustration, and humiliation. These losses are either permanent or continuing and JERKINS will suffer these losses in the future.

**WHEREFORE**, Plaintiff, VIOLA JERKINS, demands judgment against IHG to declare that the actions of the Defendants violated the Fair Housing Amendments Act, by discriminating

against persons with disabilities; and award Plaintiff injunctive relief to prohibit such discriminatory actions, and extensive training on the requirements of the fair housing act, as well as compensatory and punitive damages, and their attorneys' fees and costs as well as any other such relief as this Court deems just and equitable.

### COUNT II –FAILURE TO REASONABLY ACCOMMODATE – FAIR HOUSING ACT, 42 U.S.C. § 3604(f)(3)(B) and Fla. Stat. 760.23(8)

39. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 33 above as though fully set forth herein.

40. As a person with a mobility impairment and with diabetes, Ms. JERKINS has an obvious disability.

41. IHG provides a programs and services in addition to its providing long term housing options, these include a full breakfast buffet, sundowner receptions with free beverages and a light dinner, an on-site business center, laundry service, daily and weekly housekeeping, evening reception, maintained and heated pool.

42. IHG brings items up to guest rooms on a frequent basis.

43. JERKINS requested a glass of juice to be brought up to her from the buffet when she was feeling hypoglycemic and was advised that service would not be provided to her.

44. Because of JERKINS mobility impairment, she needed assistance in obtaining food from the buffet.  When IHG discovered that an employee assisted Ms. JERKINS, IHG decided that Ms. JERKINS should no longer live there and she was a liability and should go to an assisted living facility.

45. Such restrictions on JERKINS use and enjoyment of her premises are without purpose or reason, and were not a fundamental alteration or undue burden.

46. Such actions by IHG were in total and reckless disregard of Plaintiff's rights and indifferent to the needs of JERKINS.

47. Further, as a direct and proximate result of Defendants' refusal to accommodate JERKINS, JERKINS has suffered irreparable loss and injury including, actual damages, humiliation, emotional distress, and deprivation of her right to equal housing opportunities regardless of disability.

**WHEREFORE**, Plaintiff, VIOLA JERKINS, demands judgment against IHG to declare that the actions of the Defendants violated the Fair Housing Amendments Act, by discriminating against persons with disabilities; and award Plaintiff injunctive relief to prohibit such discriminatory actions, and extensive training on the requirements of the fair housing act, as well as compensatory and punitive damages, and their attorneys' fees and costs as well as any other such relief as this Court deems just and equitable.

**A JURY TRIAL IS DEMANDED FOR ALL ISSUES TRIABLE BY A JURY**

Dated this 4th day of September, 2019.

> BY: *s/Matthew W. Dietz*
> MATTHEW W. DIETZ, ESQUIRE
> FL. BAR NO.: 0084905
> DISABILITY INDEPENDENCE GROUP
> 2990 Southwest 35th Avenue
> Miami, Florida 33133
> Phone (305) 669-2822
> Facsimile (305) 442-4181
> E-Mail: mdietz@justdigit.org
> aa@justdigit.org